## Brookhaven Borough Incorporation

*Edward D. McLaughlin* and *Donald H. Hamilton*, for petitioners.

*E. P. Balderston, Jr.*, of *Hodge, Hodge & Balderston*, for exceptant Pennsylvania Company, etc.

*Norman Snyder* and *M. Snyder*, for exceptant Bullock.

*Sara M. Caldwell*, exceptant p.p.

MacDADE, P. J., ERVIN and SWENEY, JJ., April 4, 1945.—This is a petition of 239 freeholders, residing within the vicinity of the community or village known as "Brookhaven", asking for the incorporation of a borough to be known as "The Borough of Brookhaven". The proposed borough is carved out of the Township of Chester and is bounded on the North by Dutton's Mill Road and Middletown Township, on the East by Ridley Creek, on the South by Parkside Borough, the City of Chester and Upland Borough, and on the West by

Bridgewater Road and Chester Creek. At the hearing on March 7, 1945, the petition for incorporation was amended so as to exclude therefrom what is known as the "Smith" tract located at the extreme southerly tip of the proposed borough.

When the petition was filed, the court signed an order requiring notice of the filing of the petition to be advertised in the Chester Times and Weekly Reporter once a week for four weeks within the 30 days immediately before March 7, 1945; that at least 100 handbills giving such notice should be posted at prominent places within the limits of the proposed borough, and that there should be posted in the fire house in the borough a complete description of the boundaries and a plan showing the boundaries of the borough. At the hearing there was offered in evidence proofs of publication and affidavits showing that all the requirements of said order for advertising had been met.

At the hearing, one Horace D. Bullock, a taxpayer of Chester Township, not residing within the limits of the proposed borough, filed exceptions objecting to the incorporation (1) Because the proposed decree made no provisions for the apportionment of Chester Township's assets or liabilities; (2) that the proposed decree made no provisions for the dismissal or substitution of elective officers of Chester Township residing within the limits of the borough; and (3) that the proposed decree made no provisions for the allocation of the assets and liabilities of the Chester Township school district.

None of these exceptions is valid for the reason that, under the law, machinery is set up for taking care of all of these matters after the incorporation of the borough, and the exceptions have no proper place in a proceeding to incorporate a borough.

Miss Caldwell, who lives practically in the geographical center of the proposed borough, appeared and protested orally the inclusion of her property in

the borough. She filed no written exceptions. She offered no legal objections and simply stated that she objected because she was having trouble with neighbors and some small boys in the vicinity. We suggested that Donald H. Hamilton, one of the attorneys for the petitioners, personally visit Miss Caldwell and explain the proceedings to her. He reported that he did and was impressed with Miss Caldwell's knowledge of borough law. He subsequently ascertained that she had spent some time looking up the law in the Lindsay Law Library. Mr. Hamilton feels that Miss Caldwell understands that she has no legal reasons for objecting to the incorporation, and he told her that in his opinion it would benefit both her and her property to be included in the borough.

Exceptions were also filed by The Pennsylvania Company, Trustee, J. Allen Hodge, Substituted Trustee, of the Estate of John P. Crozer, deceased, and William J. Wolf. William J. Wolf, it appeared, had contracted to purchase from the Crozer Estate what is known as the "West Farm", located at the extreme westerly side of the borough between Bridgewater Road and Chester Creek. The exceptions filed on behalf of the Crozer Estate and Mr. Wolf were that the Crozer lands had been used exclusively for farming, were not part of the community known as "Brookhaven", and that said lands did not properly belong to the proposed borough. These exceptions will be discussed hereafter.

At the hearing it developed that the "West Farm" had actually been used exclusively for farming and it was, therefore, determined by the incorporators to eliminate that farm lying between Bridgewater Road and Chester Creek from the borough. The boundaries of the borough were, therefore, revised, and the form of decree of incorporation accompanying their brief contains a description eliminating therefrom the "West Farm".

The only remaining objections are those advanced by the Crozer Estate, to wit, that the Crozer lands do not properly form part of the borough and are used exclusively for farming.

At the hearing, several residents of the proposed borough testified. They stated that their reasons for wanting the incorporation were that they desired to govern themselves; that the Feltonville Section of Chester Township was far removed from Brookhaven; that they wanted the advantages given by law to a borough form of government, and that their interests were such that they should be permitted to form a municipality separate from the Township of Chester.

It appeared that there were about 150 separate properties in the proposed borough, and that out of that number the owners of 140 of the properties had joined in the petition for incorporation. This represents 93 percent of the properties located in the borough. The petition was signed by 239 freeholders in the borough.

Mr. Tomlinson testified in support of the exceptions filed by the Crozer Estate. He stated that John P. Crozer died in 1926; that for three or four years after John P. Crozer's death, the Crozer property was farmed and that for eight or nine years following this period the lands were not used at all. He said that since 1939 the "dairy farm" had been operated as a farm and that the other portion of the Crozer property was rented to various persons. He admitted that the Shaw farm, which lies on both sides of Edgmont Avenue, was rented to an individual who is employed at the Sun Ship Yard. He admitted that the barn on the Shaw farm had burned down some years ago and that it was not equipped to be operated as a farm, both because of the lack of necessary farm buildings and because of the lack of farm machinery. His testimony proved conclusively that the Crozer properties, with the exception of the "West Farm", had not been used exclusively for farming for a number of years.

Witnesses who testified on behalf of the incorporators likewise stated that the Crozer properties, except the "West Farm", had not been used exclusively for farming for a number of years.

The substance of the testimony was that the Crozer lands, except the "West Farm", are not even adaptable for farming purposes.

Mr. MacBride, the suburban real estate officer of The Pennsylvania Company, one of the trustees of the Crozer Estate, testified that the Crozer lands were not held for farming, but were held exclusively for the purposes of investment and resale. He admitted that the advantages attendant upon including the Crozer lands within the borough, such as the probability of the construction of a sewer which would be available to the Crozer tracts, would greatly aid the sale thereof. His testimony corroborates the contention of the incorporators that the Crozer lands, except the "West Farm", are not "lands used exclusively for farming" as stated in the act, but are lands not only not used for farming in fact, but are lands held for investment and resale and which would be benefited if they were included within the limits of the proposed borough.

The authority of the court of quarter sessions to incorporate boroughs is found in The General Borough Act of May 4, 1927, P. L. 519, as amended by the Act of August 6, 1941, P. L. 881. This act provides (53 PS §12251) :

"The courts of quarter sessions may incorporate any town or village or any township of the first class having a population of eight thousand or more within their jurisdiction into a borough. Every town or village and every such township of the first class so incorporated shall be a body corporate and politic by the name which shall be given by the court."

The act further provides by section 202 that the application for incorporation shall be by petition signed by a majority of the freeholders within the limits of

the proposed borough, which signatures must be secured within three months before presentation of the petition to the court. The petition in this case was signed by 93 percent of the freeholders and the signatures, which were dated, were all secured within three months prior to the presentation of the petition.

The Act of 1927 further provides by section 203:

"The application shall set forth the title of the proposed borough, with a particular description of the boundaries thereof, exhibiting the courses and distances in words at length, and be accompanied with a plot of the same."

These requirements were complied with.

Section 204 of the act as amended provides for publishing notice of the filing of the petition and the hearing. The requirements of this section, as well as the original order for advertising of the court, have been observed.

The only exception to the inclusion of land within the limits of a proposed borough is found in section 206 of the act, which provides:

"When, in any application, the boundaries fixed by the petitioners shall embrace lands exclusively used for the purposes of farming, the court may, if it deem such land does not properly belong to the proposed borough, at the request of the party aggrieved, change the boundaries so as to exclude therefrom the land used for farming purposes."

This section has been discussed above. The "West Farm", which has been used exclusively for farming, has been eliminated from the proposed borough. The balance of the Crozer holdings, it is contended by the incorporators as discussed above, is not land used exclusively for the purpose of farming and should properly be included within the limits of the borough.

The case of In re Petition of Borough of Churchill, 111 Pa. Superior Ct. 380, conclusively disposes of the other contention of the Crozer Estate that it is not

properly a part of the community of Brookhaven. In that case, it was said (p. 382) :

"The Borough Code of 1927, P. L. 519, sec. 201, provides that 'the courts of quarter sessions may incorporate any town or village within their jurisdiction into a borough'. Much emphasis is laid by the appellant upon the fact that there must be a town or village before a borough can be incorporated. This, we may assume to be correct, but what constitutes a village is very hard to define exactly. It is usually a small assemblage of houses collocated under a regular plan regarding streets and lanes. While in former years it was usually composed of houses that were comparatively close together, we cannot lose sight of the fact that in the more recent development of rural property adjacent to cities or towns, villages are formed with houses having larger areas surrounding them and the dwellings do not, strictly speaking, form a compact group. No one would say that to call such a collection of houses a village would be improper. Under the facts as presented in the case before us, this was purely a matter within the discretion of the lower court. We could not rule, as a matter of law, that the territory to be incorporated as a borough is not a village. There are 45 houses within the limits of the proposed borough. This, of course, would give if equally distributed, quite a large area of land to each house. Notwithstanding, we believe the court was right in considering the character of the neighborhood as being of a suburban character and that the houses being somewhat detached did not prevent the formation of a borough."

In fact, the Crozer property actually abuts the community of Brookhaven proper. As was stated in the Churchill Borough case (p. 383) :

"The request of the petitioners to incorporate should be granted, if it appears that there is no lawful objection: Edgewood Borough, 130 Pa. 348, 353, 18 A. 646."

Significant language was used in the Incorporation of the Borough of Edgewood, 130 Pa. 348, where it was said (p. 353) :

"The law contemplates the formation of boroughs out of villages and adjacent territory; and when the people in the village and its adjacent territory, with almost entire unanimity, ask incorporation, it would seem to be a wilful disregard of the intention of the legislature in its borough legislation, and the rights of the people thereunder, to refuse them borough privileges."

A case directly in point arising in our own county was In re Millbourne Borough (No. 1), 46 Pa. Superior Ct. 19. This case disposes of all the objections raised by the Crozer Estate. There it was said (p. 24) :

"Further objection is made that land of Howard Sellers is included in the borough. This is a homestead of seventeen acres said to be used for farming purposes, but this raises a question of fact for the consideration of the court below. An examination of the map of the territory to be incorporated leads us to believe that it was not improper to include the land in question. The court has found that it was in no sense a farm but a homestead in the suburbs of a great city. It is assessed for taxation at $40,000 and is said to be worth more than three times that amount. It is so related to the closely built up part of the territory involved as to be properly connected therewith in any project for the formation of a borough. The fact that part of it is used for farming purposes does not prevent its inclusion. Nearly all of the boroughs in the commonwealth inclose land which is used for agricultural purposes. Blooming Valley Boro., 56 Pa. 66, illustrates what has been done with reference to the inclusion of farm lands. Lands used exclusively for farming and not properly belonging to the village are rightly excluded, but what land belongs to this class is a question of fact to be determined by the court having control of the proceeding. These considerations apply as well to the complaint that the low land along Cobbs Creek was

included. If the borough is to exist at all this land naturally would come within the corporate limits as would also the Millbourne Mills property."

Throughout the entire proceeding the incorporators have fully coöperated with persons having valid objections to being included in the borough. The owners of the "Smith" tract objected because they desired to become part of Parkside Borough, and the boundaries of ·the proposed Brookhaven Borough were changed accordingly. As the hearing it appeared that the "West Farm" was used exclusively for farming, and the boundaries of the proposed borough were again revised so as to exclude that land. No other valid objection on the part of any person appears.

The people of this community sincerely and heartily desire the incorporation. They want to govern themselves and want to have their own borough government with the benefits attendant thereto. They have invoked the provisions of the law giving them the right to self-government.

Their wishes should be granted and The Borough of Brookhaven should be incorporated with the boundary limits as set forth in the decree of incorporation.